Citizens Fidelity Bank and Trust Company, Trustee, et al. [1] v. Commissioner. Citizens Fidelity Bank & Trust Co. v. Commissioner
Docket Nos. 54133-54136.
United States Tax Court
T.C. Memo 1956-162; 1956 Tax Ct. Memo LEXIS 130; 15 T.C.M. (CCH) 850; T.C.M. (RIA) 56162; July 9, 1956
*130 The decedent, during his lifetime, pledged stock with a bank to secure a loan from the bank to H, a corporation, of which decedent was president. The corporation gave its notes to the bank. The decedent did not endorse the notes. After decedent's death, the bank called on H to make payment of the notes, which it was unable to do. The executors of decedent's estate used cash in the estate to satisfy the bank's demands and the notes were turned over to the estate. H gave the estate four new notes for its old notes in amounts equal to the interests of 4 legatees in the estate; the new notes were distributed to the legatees; the new notes eventually were paid by H. Held, upon the facts, that the respondent erred in determining that the basis of the new notes was zero; held, further, that the basis of the notes was the sum paid by the executors to obtain the notes and the collateral which had been pledged to secure the notes. John Marshall, Jr., Esq., Kentucky Home Life Building, Louisville, Ky., for the petitioners. Lyman G. Friedman, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income taxes *131 as follows: Docket
No.
Petitioner
1949
1950
54133
Citizens Fidelity Bank
None
$ 7,027.19
54134
Estate of John G.
Heyburn
$1,615.23
4,216.13
54135
H.B. and F. M. Hey-
burn
1,268.58
2,507.41
54136
Julia B. Heyburn
None
11,919.99
The Commissioner also determined in Docket No. 54134, Estate of John G. Heyburn, an addition to the tax for 1950 under section 294(d)(2), 1939 Code, in the amount of $593.94 for underestimation of tax. The petitioners in Docket Nos. 54134 and 54135 claim that there are overpayments in income tax for 1949 and 1950. The chief issue is whether gains, if any, derived from the receipt by petitioners of payments on notes of Heyburn Building Company are taxable as ordinary income or as capital gains. Findings of Fact Each of the petitioners resided in Kentucky during the taxable years. They filed their returns for 1949 and 1950 with the collector of Internal Revenue for the district of Kentucky. The Heyburn Building Company, hereinafter called either the Heyburn Company or the Company, is a Kentucky corporation. Between March 5, 1937 and January 3, 1939, the Heyburn Company borrowed $84,935.32 from Citizens Union *132 National Bank of Louisville, Kentucky, hereinafter referred to as the bank, for which it gave the bank four notes which are referred to hereinafter as the original notes. William Heyburn owned 6,000 shares of stock of Belknap Hardware and Manufacturing Company, hereinafter referred to as Belknap stock to the bank as security for the four notes of the Heyburn Company under a pledge agreement with the bank dated April 25, 1935. He did not endorse the notes, however. The pledge agreement of April 25, 1935, provided as follows: "CITIZENS UNION NATIONAL BANK "Louisville, Kentucky
"In consideration of $1.00 the receipt of which is hereby acknowledged and of the CITIZENS UNION NATIONAL BANK's extending or continuing to extend credit to the debtors hereinafter named, the undersigned hereby assigns, mortgages, pledges and conveys unto the CITIZENS UNION NATIONAL BANK all of the right, title and interest of the undersigned in and to the following securities as collateral security on the debt which is now or hereafter may be owing to the "CITIZENS UNION NATIONAL BANK by HEYBURN BUILDING CO. 12,000 Shares of stock in Belknap Hdwe. & Mfg. Co., represented by Certificate No. - and CITIZENS *133 UNION NATIONAL BANK is hereby authorized to hold, sell or otherwise deal with such collateral securities as if they had been pledged by the debtor himself and subject to the terms of the note executed by the debtor evidencing the debt secured hereby. "Dated at Louisville, Kentucky, this 25 day of April, 1935. Witness: (sgd.) J. A. DOWNING (sgd.) WM. HEYBURN" William Heyburn died on April 21, 1939, and on that date the total amount of the unpaid balance due and owing on the four original notes of the Heyburn Company amounted to $78,045.32. William Heyburn was survived by his widow, the petitioner, Julia B. Heyburn, and by three sons, namely, Henry B. Heyburn; John G. Heyburn, who died August 14, 1952; and Alexander Heyburn, who died prior to 1944. William Heyburn's will appointed his three sons as his executors. The provisions of William Heyburn's will, pertinent to these proceedings, are: "Fourth. In the event my wife, Julia B. Heyburn, survives me, I devise, bequeath and appoint one-fourth (1/4) of all the rest and residue of the property, of every kind and description and whereever situated, to which I may be legally or equitably entitled, or over which I have any *134 power of appointment to the Trustee hereinafter named, upon trust, to pay the net income therefrom unto my said wife, Julia B. Heyburn, during her natural life, and upon her death, to distribute the principal thereof among my three sons, Henry B. Heyburn, Alexander Heyburn, and John G. Heyburn, in equal shares; * * * "Fifth. The remaining three-fourths (3/4ths) of all the rest and residue of the property of every kind and description, and wherever situated, to which I may be legally or equitably entitled, or over which I have any power of appointment (or the entire residue of my estate in the event my wife, Julia B. Heyburn, predeceases me), I devise, bequeath and appoint to my three sons, Henry B. Heyburn, Alexander Heyburn and John G. Heyburn, to be divided between them in equal shares., * * * "Seventh. I hereby appoint the Fidelity & Columbia Trust Co. of Louisville, Kentucky, as Trustee of all the trusts created by this will. "Ninth. I hereby appoint my sons, Henry B. Heyburn, Alexander Heyburn, and John G. Heyburn, as the executors of this will, and direct that no surety upon their official bond as such shall be required. "Second. I give and bequeath to each of my daughters-in-law, *135 Florence M. Heyburn, Martha R. Heyburn, and Nancy C. Heyburn Five Hundred (500) shares of my Belknap Hardware & Manufacturing Company common stock. "Third. I give and bequeath to my wife, Julia B. Heyburn, all of my books, silver, furniture, household articles, automobiles, jewelry, personal effects and other tangible personal property of every kind and description." The above-quoted specific bequests to his wife and his three daughters-in-law are the only dispositions of specific property made by Heyburn's will. Thus all of the property which passed under his will and which remained after the payment of charges against his estate and the satisfaction of these bequests would be distributable in equal shares to his four residuary legatees, namely, his three sons and the Fidelity and Columbia Trust Company as trustee for his widow, Julia B. Heyburn. Subsequent to the death of William Heyburn and prior to 1949, the corporate name of petitioner, Julia B. Heyburn's trustee, was changed from Fidelity and Columbia Trust Company to Citizens Fidelity Bank and Trust Company. Prior to January 2, 1940, the bank demanded of the Heyburn Company that it pay, on or before January 2, 1940, the *136 then principal balance, $78,045.32, or the original notes. In reply to that demand the Heyburn Company advised the bank that it was unable to pay any part of the $78,045.32 on or before January 2, 1940. On receipt of such advice the bank notified Heyburn's executors that, unless they paid the $78,045.32, the bank would sell the 6,000 shares of Belknap stock which the bank held as collaterial security for the payment of the $78,045.32, and would use such part of the proceeds of that sale as might be necessary to pay in full the Heyburn Company's $78,045.32 indebtedness on the original notes. On January 2, 1940, a check for $78,045.32, payable to the bank, was drawn against and charged by the bank against funds on deposit with it to the credit of Heyburn's executors. This check was delivered to the bank. On receipt thereof the bank delivered each of the four original notes to John G. Heyburn after simultaneously endorsing each such note as follows: "For value received, all right, title and interest of the Citizens Union National Bank in the within note of the Heyburn Building Company, is hereby sold, assigned, and transferred without recourse to Henry B. Heyburn, Alexander Heyburn *137 and John G. Heyburn, Executors of the Estate of William Heyburn, deceased, this 2nd day of January, 1940. "CITIZENS UNION NATIONAL BANK By E. T. Meriwether Vice President and Cashier." On December 31, 1941, the original notes were delivered to the Heyburn Company, for which Heyburn Company issued the following new notes, hereinafter called the substitute notes, to the payees respectively named therein: Date
Maturity
Principal
Payee
December 31, 1941
February 2, 1943
$20,949.38
H. B. Heyburn
December 31, 1941
February 2, 1943
20,949.38
John G. Heyburn
December 31, 1941
February 2, 1943
20,949.38
Alexander Heyburn
December 31, 1941
February 2, 1943
20,949.38
Citizens Fidelity Bank and Trust
Co., Trustee Under the Will of
$83,797.52
William Heyburn, Deceased.
The principal amount ($20,949.38) of each substitute note consisted of: $19,511.33,
being 1/4 of $78,045.32, which was the
balance due on the original notes.
1,438.05,
being interest which had accrued on
$19,511.33 from January 2, 1940, to
December 31, 1941
$20,949.38
On January 31, 1944, the Company paid $949.38 to each payee, except Julia *138 B. Heyburn, on account. On May 11, 1949, the Company paid $6,000 to each payee, except Julia B. Heyburn and Citizens Fidelity Bank and Trust Company, Trustee under the will of William Heyburn, deceased, on account. On November 28, 1950, the Company paid $14,000 to Henry B. Heyburn, on account; $14,000 to John G. Heyburn, on account; and $20,000 to Citizens Fidelity Bank and Trust Company, Trustee, on account. No portion of the $20,000 paid in 1950 to the Citizens Fidelity Bank and Trust Company, Trustee, was reported in the income tax return filed by it for 1950. John G. Heyburn and Martha R. Heyburn, and Henry B. Heyburn and Florence M. Heyburn, reported the payments referred to above as long-term capital gains in their income tax returns for 1949 and 1950. No payments on account were made by the Company in 1949 or 1950 to Julia B. Heyburn. On January 2, 1940, the value of the stock was $138,000 ( $23 per share). Heyburn's four residuary legatees acquired the original notes on January 2, 1940, by an outlay of $78,045.32. The fair market value of the original notes on January 2, 1940, was $78,045.32. $19,511.33 is the basis of the substitute note payable to each of *139 the petitioners. Opinion HARRON, Judge: The essential question to be decided is whether any gain was realized by the petitioners as a result of payments to them on the substitute notes by the Heyburn Company. When William Heyburn died in early 1938, Heyburn Building Company, of which he was president, owed the Citizens Union National Bank $78,045.32 on four notes, collectively referred to as the original notes. Heyburn was not liable on the original notes. He had, however, secured them with 6,000 shares of his Belknap Hardware & Manufacturing Company stock. On January 2, 1940, the bank was paid $78,045.32 out of funds held by Heyburn's executors for ultimate distribution to the four residuary legatees under his will, namely, Henry B. Heyburn, John G. Heyburn (deceased), Alexander Heyburn (deceased), and Fidelity & Columbia Trust Company, as trustee of Julia B. Heyburn. In return the bank endorsed and delivered the original notes to Heyburn's executors. Thereafter the Heyburn Building Company, upon surrender to it of the original notes, gave to each residuary legatee its note in an amount equal to such legatee's then undivided one-fourth interest in the original notes. These *140 new Heyburn Building Company notes are referred to as the substitute notes. Each substitute note was later paid in full. The position of the respondent is that the basis of each substitute note, given to a particular residuary legatee to whom it was payable, was zero. Petitioners, who are 3 of the 4 residuary legatees, contend that the basis of a substitute note is one-quarter of the sum of $78,045.32 paid to the bank for the original notes, or $19,511.33. The transaction on January 2, 1940 with the bank took the form of a purchase of the original notes of the Heyburn Company. The endorsement on each note recites that the bank has sold the notes to the executors. The original notes represented indebtedness of the Heyburn Company to the bank; the indebtedness was not the indebtedness of William Heyburn or of the estate. The estate wanted to free the 6,000 shares of Belknap Hardware Company stock, of which the petitioners were the equitable owners as residuary legatees under Heyburn's will, from the pledge as security for the indebtedness of the Heyburn Company. Under a practical viewpoint, the estate became the creditor of the Heyburn Company in the place of the bank. In fact, the *141 original notes were handled so that each residuary legatee received evidence of the indebtedness of the Heyburn Company, namely, a substitute note. There is no dispute between the parties as to the facts. The question is entirely what construction is to be placed upon the facts. We are unable to follow the respondent's theory that each note which each of the petitioners received from the Heyburn Company (each substitute note) had a basis of zero. The situation is a relatively simple one. The Heyburn Company owed the bank money; William Heyburn, the president of the Heyburn Company, had passed away and the bank demanded payment of the company's debt. The executors of the Heyburn estate had funds in the amount of $78,045.32, which were being hedd for ultimate distribution to the four residuary legatees under his will. By applying the above amount of money to acquire the original notes of the Heyburn Company from the bank, the original notes of the Heyburn Company were substituted for cash. In order to make distribution to the residuary legatees, the original notes were exchanged for substitute notes of the Heyburn Company which were distributed to each legatee. We think it is clear *142 that each note in the face amount of $19,511.33 had a basis to each legatee of that amount. We do not think it is necessary to consider alternative arguments. One of them is if the original notes were not purchased but were "paid", then each petitioner would have acquired through the doctrine of subrogation a claim in the amount of $19,511.33 against the Heyburn Company. Petitioners have cited ample authority (which we need not cite) that under the theory that the original notes of the Heyburn Company were paid, each legatee became entitled in equity to demand, for his or her reimbursement, the performance of its original obligation by the Heyburn Company. See Pomeroy's Equitable Remedies, 1905 Ed., Section 920. It should be pointed out, also, that the notes of the Heyburn Company were not valueless. They were secured by 6,000 shares of stock which were included in the gross estate of William Heyburn, deceased, at $23 per share, which value continued long after January 2, 1940, when the original notes were taken over by the executors. For example, the record shows that on January 26, 1940, 250 shares of the stock was sold for $23 per share. It is held that the basis of each substitute *143 note held by each of the petitioners was $19,511.33. The respondent's theory that the basis of each note was zero is rejected. The petitioners concede that if any gain was realized upon payment of the notes, it is taxable as ordinary income. Under the conclusion reached above on the main question, one of the petitioners may have realized gain in a small amount. If so, it is to be computed under Rule 50. However, under the conclusion reached it appears that no gain was realized. The respondent now concedes that no deficiency is due in Docket No. 54136, Julia B. Heyburn, petitioner. The determination made in that case was made in the alternative and to protect the revenue. In view of the conclusion reached under the main issue, it appears that there was no substantial understatement of income in the return of Estate of John G. Heyburn, Deceased, Docket No. 54134, to which the addition to tax under section 294(d)(2), 1939 Code, would apply. At any rate, in that case the addition to tax, if any, under section 294(d) is not contested. The parties will dispose of this matter under Rule 50. In Docket Nos. 54134 and 54135, each petitioner claims that there is overpayment of tax. *144 In Docket Nos. 54134, and 54135, decisions will be entered under Rule 50. In Docket Nos. 54133, and 54136, decisions will be entered for the petitioners. Footnotes
1. The following cases have been consolidated herewith: Docket No. 54134, Estate of John G. Heyburn, Deceased, and Martha R. Heyburn; Docket No. 54135, Henry B. Heyburn and Florence M. Heyburn; Docket No. 54136, Julia B. Heyburn.↩